IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| **DJM,** by his Next Friend, **DM,** } | |
| and **DM and JM**, individually, } | |
| Plaintiffs, } | |
| v. } | Cause No. 2:08-CV63 |
| } | |
| **Hannibal Public School District #60** and } | |
| **Jill Janes**, } | |
| Defendants. } | |

# Plaintiffs DJM, DM and JM's Memorandum
# in Opposition to
# Defendants' Motion for Summary Judgment

## Introduction

This case arises out of a public high school suspension of DJM as a result of private instant messaging from his home computer to a confidante on October 24, 2006. The instant messaging was not during school hours and was sent to a friend's home computer. The case involves the nightmare topic of guns and shooting people at school. The topic is one which makes it difficult to reach a fair, detached and objective decision. It is the type of case in which judges are called to "keep your heads when all about you are losing their's…" In a final analysis, this is a case of mere speech. The instant messaging was equivocal, indefinite and presented no imminent threat. It is a case of two kids bantering about a topic which was taboo. The instant messaging from both students is offensive. However, the words exchanged between them indicate their levity. The case law, in the best tradition of the bench, calls the Court to rise above the nightmare of this topic to follow the law and to overrule the Motion for Summary Judgment and to proceed to a trial on the merits.

The private instant message bantering which gave rise to this case did not constitute a true threat and was protected speech under the First Amendment to the United States Constitution. The case law has identified some of the nonexclusive factual bases for

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                Cause No. 2:08-CV63

determining whether or not a statement constitutes a "true threat."  Application of the rules to

this case reveal that there are genuine issues of fact about whether instant messages were or

were not equivocal, conditional or immediate.  There is a genuine issue of fact as to whether

the messages were knowingly and intentionally communicated.  There is a genuine issue of fact

about whether there was a desire to have some effect or achieve some goal through

intimidation or if this was as we believe mere internet bantering which, considering the context

and the reaction of the listener, did not qualify as a "true threat" within the meaning of the

law.  There is a genuine issue of fact as to what, if any, disruption was caused in the school as

a result of the occurrence.  In addition, there is a material issue of fact as to whether or not a

handful of telephone calls by parents responding to false information and misinformation

required a full year's suspension from school or if it was excessive punishment for engaging in

protected speech activity concerning a topic which is taboo.  There is a genuine issue of fact

about whether the defendants refused to consider constitutional arguments at the hearing.

Because of the presence of these genuine issues of material fact, the Motion for Summary

Judgment should be overruled.

### Standard for Consideration of Motion for Summary Judgment.

In determining whether summary judgment should issue, the facts and

inferences for these facts are viewed in a light most favorable to the non-moving party, and the

burden is placed on the movant to establish both the absence of a genuine issue of material fact

and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Matsushita Electric*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89

L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505,

209-10, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548,

2552, 91 L.Ed.2d 265 (1986).  All of the facts and inferences are to be viewed in a light most

favorable to the non-moving party.  *Id*.

The Hannibal Public School District is seeking summary judgment on both

counts.  Count I is a trial de novo review of the suspension.  *Moore v. Appleton City R-II*

*School District*, 232 SW3d 642 (Mo.App. S.D. 2007); §167.161.3 RSMo.  It is an

- 2 -

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.              Cause No. 2:08-CV63

administrative case in which the superintendent has taken away a student's right to enroll in
school and attend classes and the burden of production and persuasion falls upon the School
District.  *Bernsen v. City of Florissant*, 588 SW2d 194 (Mo.App. E.D. 1979).  The standard
for consideration of Count I, upon which the School District bears the burden of proof, is
much higher than a case in which the burden of proof falls upon the non-moving party.  *United
States v. Real Property Located at 3234 Washington Avenue North, Minneapolis, Minnesota*,
480 F.3d 841 (8th Cir. 2007).  In a case in which the moving party bears the burden of proof,
the Motion for Summary Judgment must be overruled "if the credibility of a critical *interested*
witness is even partially undermined in a material way by the non-moving party's evidence."
*Id*. at 845.  On Count I, the Court should overrule the Motion for Summary Judgment because
the plaintiffs' evidence brings into question the credibility of the testimony of defendant Jill
Janes and the School District's other key witness, principal Darin Powell.  On both counts the
Motion for Summary Judgment should be overruled because there are genuine issues of
material fact and the defendants have not proved that they are entitled to judgment as a matter
of law.

# Argument

## I

### Suspension was First Amendment violation.

The instant message communications which gave rise to this case are protected
speech.  This case arises out of private instant message communications between two high
school students on their home computers.  It did not take place during school hours or on
school property.  The partial written record of the instant message communications is
contained in Exhibit 14.  Only the first page and a half (A36-A37) and the bottom half of page
(A41) deal with the topic of guns and school.  These words are interspersed among comments
about Christian music, classmates, TV shows, masturbation, piercing and other drivel.  At
various points  DJM's comments were equivocal at worst and he concluded by saying,
"anyways i'm not going to do that, not anytime soon i feel better than i did earlier today."
(Exb. 14 p. A42).  DJM has consistently described this as a joke.  His messages, taken in

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

context, are more accurately described as a crude and offensive method of stating DJM's
depression and frustration with school.  This is protected First Amendment speech.

### a. School discipline subject to free speech limitations.

The free speech limitations apply in the context of school discipline.  *Tinker v.
Des Moines Independent Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21
L.Ed.2d 731 (1969).  Plaintiffs' interest in First Amendment protections is even greater in this
case because the speech was private internet messages at home.  The United States Supreme
Court has recognized that schools have less authority to regulate speech outside school
premises.  *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98
L.Ed.2d 592 (1988) and *Bethel School District #403 v. Fraser,* 478 U.S. 675, 688, 106
S.Ct. 3159, 92 L.Ed.2d  549 (1986).

Although free speech limitations apply to school discipline, the courts have
recognized that students' free speech rights are not coextensive with those of adults in non-
school settings.  The Courts, beginning with *Tinker*, have adopted special rules for analyzing
school speech cases.  However, schools are not entitled to the benefit of school speech
precedents in every case.  The limits of these precedents are most often found in off-campus,
private speech.

### b. Not a school speech case.

DJM's case is one of private, off-campus speech.  The case involves in-home
instant messages.  It was expected that the messages would have been erased when the window
was closed.  The partial record saved from DJM's computer, Exhibit 14, was never shared
with anyone at school.  The School District did not even have this record at the time of the
suspension appeal hearing.  The only written records were edited emails by CM which she
emailed to an adult friend and school principal Darin Powell.  (Exb. 10; Exb. 11).  None of
these exhibits were ever published or circulated to any student at school.  It was unimaginable
to DJM that there would have been any written record or that any of the conversation would
have been published to any third parties.  It is clear that DJM did not approve or assist in any
way to take his private communications onto the school yard.

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

This case is outside the boundaries where courts should apply school speech precedents. All of the United States Supreme Court cases on student speech have involved on campus speech or speech at school sponsored activities or functions.[1] The Supreme Court has implicitly recognized that there are boundaries beyond which school speech precedent should not be applied in its opinion in the recent case of *Morse v. Frederick*, 551 U.S. 393, 401, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007). The Court stated, "There is some uncertainty at the outer boundaries as to when courts should apply school speech precedents..." *Id*. For this proposition, the Court cited a thoroughly researched and well-reasoned opinion in the case of *Porter v. Ascension Parish School Board*, 393 F.3d 608 (5th Cir. 2004). By the holding and the reasoning in *Porter*, DJM's case is outside the boundaries for which courts should apply school speech precedents.

*Porter* involved a student sketch depicting a violent siege of a high school campus drawn in the privacy of a student's home. The school was under siege by a gasoline tanker truck, missile launcher, helicopter and armed persons. There were obscenities, racial epithets and disparaging remarks about a principal. There was a brick being hurled at the principal. *Id*. at 611. The student shared the drawing with his mother, his younger brother and a friend. Two years later his younger brother took the drawing to school which gave rise to the case. In *Porter* the Court held that the drawing was protected First Amendment speech and was outside the boundary of school speech precedents.

The holding and the reasoning of *Porter* should be applied to DJM's case. DJM was involved in instant message communications with a confidant. DJM did not even know the instant message communications could be saved or archived and it was unintended that there would be any record of the conversation which could be published or shared with

---

[1] *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct.733, 21 L.Ed.2d 731 (1969) is the lead Supreme Court case involving school speech. It involved armbands worn at school. *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) involved a student speech at a school assembly. *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) involved a school published high school newspaper. *Morse v. Frederick*, 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) occurred at a school-sponsored, school-sanctioned and school-supervised event.

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                Cause No. 2:08-CV63

anyone.  The instant message communications were between students who were in their
homes, on home computers.  Neither of them had a practice of saving or archiving the instant
messages.  In this case, the most offensive and troubling of the communications were a result
of encouragement and prompting by a fellow student who was laughing along through the
conversation.  Neither DJM nor any other reasonable person would have expected that CM
would publish this conversation.[2]  It was fully reasonable to expect that this conversation
would never see the light of day and would never have been published to anyone.

This case is analogous to *Porter*.  It is off campus speech that is not within the
boundary of school speech precedent.

### c. Genuine issue of fact of intent to communicate a threat.

There is a genuine issue of fact whether DJM intended to communicate a threat
which could remove his instant messages from protection of the First Amendment.  Many of
the cases involving First Amendment issues on alleged threats turn on whether the speech
constituted a "true threat."  However, there is a threshold question which must be addressed
before the Court need even consider the question of whether there was a "true threat."

> "Before we address whether a reasonable recipient would view
> the letter as a threat, we are faced with a threshold question of
> whether J.M. intended to communicate the purported threat."
> *Doe v. Pulaski County Special School District*, 306 F.3d 616,
> 624 (8th Cir. 2002).

It is clear from case law that not every communication of a message to a third
party removes it from the protection of the First Amendment.  There is a specific intent
requirement.  "True threats" must be communicated in a knowing and intentional manner.
*Porter*, supra 618.  "[S]omething more than their accidental and unintentional exposure to
public scrutiny must take place."  *Id.*  Surely, DJM could have discussed all of the content of

---

[2]In fact, the email versions in Exhibits 10 and 11 are selective.  CM edited the most outrageous
and offensive things that she had said in her attempt to encourage DJM to become equally outrageous.  She was
warned by her adult friend Leigh Allen to watch what she was saying.

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

the instant messages with a counselor without fear that he would be subject to school discipline. Surely, he could have discussed this with this parents without fear that he would be subject to school discipline. In *Porter* the student displayed his drawing to his mother, a younger sibling and a close friend. However, the Court held that this was not an intentional communication which would remove the sketch from the protection of the First Amendment. The *Porter* logic and holding applies to DJM's case.

The Eighth Circuit has never applied school speech analysis to a case like DJM's case. The defendants erroneously rely upon the opinion of the Eight Circuit in *Doe v. Pulaski County Special School District*, 306 F.3d 616 (8th Cir. 2002). Even the most cursory reading of *Doe* shows that the instant message communications in this case are not comparable to the threat communicated in *Doe*. This is fully briefed hereafter and will not be repeated at this point. However, the manner and location of the disclosure of the letter in *Doe* is pertinent to the immediate question of whether DJM's messages were intentionally communicated. In *Doe* the letter was disclosed to a friend for whom "he knew there was a good possibility that [the friend] would tell [the victim] about the letter because [the friend] and [the victim] were friends." *Id*. at 624. Even more troubling, the writer of the threats in *Doe* in more than one phone conversation with the victim told her that he had written the letter and that it talked of killing her. The writer of the threats in *Doe* made similar statements to the victim's best friend knowing they would likely be conveyed to the victim. *Id*. at 625. The writer in *Doe* had a reputation and an image of a tough guy which lent credibility to the threats. *Doe v. Pulaski* expressly relies upon the obvious intent that the threat be communicated directly or indirectly to the victim. *Doe* has been correctly analyzed in *Porter*, supra, at page 617.

> "In addition, the Eighth Circuit found that the boy intentionally communicated the threat because he allowed his friend to read the letter knowing that his friend was also a close friend of his former girlfriend. Furthermore, the boy discussed the letters with his girlfriend on the telephone on multiple occasions." *Id.*

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

       The lynchpin of the decision in *Doe* was the intentional communication directly
and indirectly to the victim of the threats.  This highlights the reasons why there is a
substantial question about whether DJM intended to communicate a threat in this case.  Neither
DJM nor the child in *Porter* intended for the message to be communicated directly or indirectly
to any alleged victim.  In both *Porter* and DJM's case the message was shared only with close
confidants and without any expectation or intention that it would go further.  Before even
addressing "true threat" analysis, the Court should hear evidence to decide whether DJM
intended to communicate his instant messages in a manner which would deprive them of First
Amendment protections.

       **d. Genuine issues of fact re:  Instant messages not "true threat."**

       The crude and offensive material included in the instant messages exchanged
between DJM and CM falls below the "true threat" level for which punishment may be
imposed.  The Supreme Court has made it clear that the offensive, upsetting and arguably
threatening speech may not be punished unless it constitutes a "true threat."  *Watts v. United
States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

       The United States Supreme Court adopted a nonexclusive three-point analysis to
determine whether a statement is a true threat within the scope of a criminal statute. *Watts v.
United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).  The internet
communications which were the subject of this case do not constitute a "true threat."  In *Watts*,
the U.S. Supreme Court adopted a nonexclusive list of factors to be taken into account
including (1) context; (2) conditional nature of the statement; and (3) reaction of the listeners.
Each of these factors weighs in favor of DJM in analyzing the internet communications which
are the subject of this case.

       The context of the utterances were private internet instant messaging which was
not publically accessible.  The instant messaging was sent to a classmate who was a confidant.
There was no threat to CM, the intended recipient of the instant messaging. In fact, there were
no specific targets to the messages until those first mentioned by CM.  When pressed for a list
of victims, DJM's first response was "well any midget would go."  That hardly seems to be a

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

serious response.  It was clear that DJM did not have a gun or a plan with which to get a gun.

When asked which gun he would use, he answered "I dunno."  In this context the messages

were not "true threats."

        Defendants in this case erroneously asked this Court to focus on a handful of

selected words.  This approach violates the precedent announced in *Dinwiddie*.  The Court

must analyze an alleged threat "in light of [its] entire factual context."  *United States v.*

*Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996).  Within the context of CM's laughing, goading

and encouragement, the messages of DJM do not constitute a true threat.  Within the context of

DJM's equivocations and statements that he was not going to do that, his messages are not a

"true threat."

        The conditional nature of the statements is the second factor in *Watts* and also

weighs in favor of DJM in this case.  In her email CM wrote that DJM was depressed and

wanted to take a gun to school and shoot everyone he hates and then himself.  DJM did not say

that he intended to go through with it.  He concluded with his comment, "anyways i'm not

going to do that.  not anytime soon i feel better than I did earlier today."  His messages were

equivocal and conditional in a manner inconsistent with the second test in *Watts*.

        The final test in Watts is the reaction of the listeners.  This factor weighs

heavily in favor of DJM.  CM repeatedly responded with laughter and encouragement.  The

reaction clearly demonstrates that neither one of the parties to the instant messaging was taking

the conversation seriously.  The conversation was punctuated by LOL (laugh out loud), hahaha

and YAYAYYAY.  When CM asked DJM who he was going to shoot, he told her "any

midget would go."  CM suggested targets that DJM did not even know.  CM suggested that

DJM should shoot all of the black women stating, "The death of a black person cracks me up."

CM was laughing and clearly encouraging DJM to become even more outrageous.  The

reaction of the listener in this case is inconsistent with a "true threat."

        The instant messaging which is the subject of this case does not meet the "true

threat" requirement adopted and applied in the Eighth Circuit in the landmark case of

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

*United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996).  At page 925, the Court itemized the

factors which have been considered in true threat analysis as follows:

> "[1.]  reaction of the recipient of the threat and of other listeners,
>
> [2.]  whether the threat was conditional,
>
> [3.]  whether the threat was communicated directly to its victim,
>
> [4.]  whether the maker of the threat had made similar statements
>
> to the victim in the past, and
>
> [5.]  whether the victim had reason to believe that the maker of
>
> the threat had a propensity to engage in violence."

The Court recognized that the list was not exhaustive.  However, it has become a starting place

for "true threat" analysis in the Eighth Circuit and other courts.  What *Dinwiddie* adds to the

*Watts* test is communication to the victim.  In each of these respects, DJM's messages fall

below the requirements of a "true threat."  DJM's instant messages were never directly

communicated to any alleged victim.  The messages were only communicated to a confidant

for whom DJM had no reason to believe would ever pass the information on to the alleged

victims.  There is no evidence if or how any alleged threat was communicated to any alleged

victim.  There had been no similar statements in the past.  DJM did not have a propensity to

engage in violence.  In fact, his reputation with school officials was to the contrary.  All the

additional factors offered by the Eighth Circuit for consideration in the *Dinwiddie* case weigh

in favor of DJM.

       In order to determine whether the message was a "true threat," the Court must

evaluate this question in the context of the culture and society in which we live.  Most of us,

who have siblings, have at one time or another stated our desire to harm a sibling.  However,

that was not a "true threat."  Many parents have at one time or another stated a desire to "beat

a child within an inch of their life."  Particularly when these words are spoken to another

parent or confidant outside the presence of the child, this should not be construed to be a "true

threat."  Our culture is absolutely full of statements in which speakers and writers express a

desire to injure or kill.  If you wonder about this, you could Google similar words and phrases

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                Cause No. 2:08-CV63

to obtain countless examples of similar statements.  In one notable example, Mel Gibson lashed
out at New York Times columnist, Frank Rich, stating, "I want to kill him.  I want his
intestines on a stick.  I want to kill his dog."  (http://www.worldnetdaily.com/news/
article.asp? ARTICLE_ID =34497).  There is a musical quintet named "I Want to Kill You."
(http://cdbaby.com/cd/killyou).   "I want to kill a president" is a famous single by Estonian
punk rock band Nyrok City.  (http://en.wikipedia.org/wiki/ I_Want_ To_Kill_A_
President_(Nyrok_City_song)). We live in a culture in which there are many crude and
offensive statements which are not "true threats."  DJM's message expressing his depression
and frustration with school should be read in this context and was not a "true threat."

This case requires the Court to consider the true nature of a threat.  Threats are
transmitted for the purpose of effecting some change or to achieve some goal through
intimidation.  There is an intent requirement for a "true threat."  " At their core, threats are
tools that are employed when one wishes to have some effect, or achieve some goal, through
intimidation."  *United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997).  If an
otherwise threatening communication is not from an objective standpoint transmitted for the
purpose of intimidation then it is not a "true threat."  *Id.* at 1496.

There is no evidence of any purpose of intimidation in this case.  There is no
evidence of any connection between CM and any of the alleged objects of the purported threat.
There is no evidence to suggest that she would be expected to have conveyed the purported
threats to the people who are mentioned.  The fact that she was laughing, encouraging and
goading DJM about the purported threat gives him and the Court every reason to believe that
she would not have communicated the purported threats to those who were named.  And there
is no evidence that she communicated the messages to anyone whose name arose in the instant
messages.  In these facts there was no intent to intimidate and the messages are not a "true
threat."

Defendants' reliance on *Doe*, supra, is misplaced.  In *Doe* the threat constituted
a letter which was written by a student personally addressed to a former girlfriend.  It was a
four page letter that referred to the former girlfriend as a "bitch," "slut," "ass," and "whore"

- 11 -

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

over 80 times.  The student used the F word no less than 90 times.  He spoke frequently in his

letter of his wish to sodomize, rape and kill his former girlfriend.  In two passages he

expressed in unconditional terms that the girlfriend "should not go to sleep because he would

be lying under her bed waiting to kill her with a knife." *Supra.* at 625.  When the victim

asked him about the content of the letter in telephone calls, he admitted the threat and did

nothing to alleviate the victim's concerns about the letter.  He testified at trial that he knew the

victim might have taken the threat as being truthful.  The school board's suspension in *Doe v.*

*Pulaski County Special School District* shows what is required at a bare minimum to prove a

"true threat."  We should also keep in mind that in the minds of six judges who filed a

dissenting opinion, the facts in *Doe* did not constitute a "true threat."

        Some of the cases cited by defendants are distinguishable because they involve

speech that was brought to the campus by the student.  In one case a detailed diary of a

Columbine attack on the school was brought to and seized from the school.  *Ponce v. Socorro*

*Indep. Sch. Dist.*, 508 F.3d 769 (5th Cir. 2007).  In other cases, the students distributed

material in a manner in which it was virtually certain to come to the school and in fact came to

the school.  *Wisniewski v. Bd. of Ed. Weedsport Cent. Sch. Dist.*, 494 F.3d 34 (2nd Cir. 2007).

In *Wisniewski* the student emailed 15 different students an icon depicting the killing of a

teacher.  This was done over a three week time period after he had already been warned by the

teacher about threats.  DJM did not engage in a three week campaign targeted at a specific

teacher and did not bring or intend for his private thoughts to be brought to the school.  DJM's

case is one in which he should be "free to speak his mind when school day ends." *Thomas v.*

*Board of Education, Granville Central School District*, 607 F.2d 1043, 1052 (2nd Cir. 1979).

### e.  Due process violations.

        Plaintiffs claim that the School District, upon advice of their attorney, refused to

consider and did not consider the constitutional claims that plaintiffs attempted to present at the

suspension appeal hearing.  The facts are undisputed.  The law is also undisputed.  The School

Board had an obligation to enforce Federal constitutional rights.  Wright, Miller & Cooper,

Federal Practice and Procedure: Jurisdiction 2d §4024.  A State decision that refuses

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.          Cause No. 2:08-CV63

consideration of Federal constitutional claims falls below due process requirements. Wright,
Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §4025. State agencies and
courts have an obligation to consider and decide the constitutional questions which are
presented to them by the parties that appear before them. *Brinkerhoff-Faris Trust & Savings
Co. v. Hill*, 281 U.S. 673, 50 S.Ct. 451 (1930). Plaintiffs in this case have alleged a failure
and refusal to even consider constitutional claims. There is substantial evidence to show the
violation. The defendants are not entitled to judgment as a matter of law.

### f. Genuine issue of fact on school disruption.

There is a genuine issue of fact on whether there was sufficient disruption or
threat of disruption to justify a year-long suspension in this case. There were no student
absences and no disruption in the classroom. There is a well delineated dispute concerning
whether there were any security changes because of this occurrence. In addition, there are
disputes about the numbers and sources of telephone calls in this case.

The handful of calls received by the District are far more likely a result of the
false information from the Hannibal forum entitled "'Hit List' at HHS" and from the
contributors who asked people to call the school. To use this as a basis for suspending a child
from school for a year is little more than bowing to the pressure of a few angry and
misinformed people. The First Amendment demands better than this.

Beginning with the first Supreme Court school speech case, school districts
always claim disruption as a basis for their suspension. *Tinker*, supra. This argument is
rejected in *Tinker* and has been rejected in many other cases including *Buessink v. Woodland
R-IV School District*, 30 F.Supp.2d 1175 (Mo. E.D. 1998). In the case at bar, as in *Buessink*
and *Tinker*, there is inadequate evidence of a real potential for disruption. Even defendant
Janes agreed that she would be required to speculate on disruption upon DJM's return to
school. In fact, he later returned to school without any incident. The defendants have not
presented evidence which as a matter of law proves disruption or risk of disruption justifying a
one year suspension from school.

### II.

- 13 -

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

**Defendant Janes not entitled to qualified immunity.**

The evidence in this case meets the two part test for qualified immunity set out in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the facts in this case constitute a violation of a constitutional right and, second, the right is "clearly established." *Id.* The evidence in this case shows that defendant Janes pursued a suspension for private off campus speech which did not constitute a threat. In addition, she exaggerated or misstated to the School Board and to this Court the alleged disruption as a basis for this suspension. She has stated to the School Board and to this Court that there were dramatic changes in security including locking doors, etc. In fact, the evidence shows that the security changes were a result of a meeting between the Hannibal Fire Department, the Hannibal Police Department and the Hannibal Public School District which took place prior to October 24, 2006, and that those same security measures are in force today. This exaggeration or misstatement would provide the Court a basis to find an intentional violation. Defendant Janes is not entitled to qualified immunity on Count II.

## III

**Defendants not entitled to judgment on Count I.**

The case at bar is not moot because the defendants admit that they still maintain discipline records in this case. The defendants argued that reversing this discipline record would have no practical affect because the record is closed. This argument is best answered by the defendants' Sunshine request to the Hannibal Police Department discussed in response to plaintiffs' Motion to Strike juvenile records. The School District obtained 30 pages of records, some and perhaps all of which, are closed, confidential juvenile records. So long as records exist, there is a risk they will be exposed even if it is in violation of law.

The issue of mootness was rejected by the State Courts in Cole County, Missouri, and in Marion County, Missouri. It was rejected when the defendants brought this matter to the Missouri Court of Appeals Eastern District in seeking a writ. The issue was fully briefed to this Court in plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Document #23) which argument is incorporated by reference. The argument of

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                Cause No. 2:08-CV63

mootness should be rejected again.  *Knapp v. Junior College Dist. of St. Louis County, Mo.*, 879 SW2d 588 (Mo.App. E.D. 1994).

Likewise, this Court should reject the defendants' argument to dismiss the case because the Amended Complaint does not include an attached copy of the decision by the School Board.  For this argument, defendants rely upon a State Court pleading case.  However, defendants removed this case to Federal Court.  Federal and not State rules apply.  In Federal Court it is sufficient to plead an official document was issued or an official act was done.  Rule 9(d) Federal Rules of Civil Procedure.  The pleading is sufficient.

In Count I plaintiffs are entitled by statute to a trial de novo.  §671.161.3 RSMo.  This means that the plaintiffs are entitled to a new presentation of evidence and new judgment concerning the sufficiency of evidence to support any suspension and whether the punishment imposed by the District was excessive.  In *Doe v. Pulaski County*, supra, the Court of Appeals lamented that the punishment was excessive, but there was nothing they could do about it.  *Doe v. Pulaski County Special School District*, supra at 627.  Count I offers the Court an opportunity to weigh evidence of the punishments.  None of this has even been included within the scope of the Motion for Summary Judgment.  Clearly there are disputed issues of fact upon which plaintiffs are entitled to a trial.

## Conclusion

First Amendment rights should be jealously guarded.  The freedom of speech won at Valley Forge should not be handed over easily.  A sixteen year old child who has left the school yard should be free to discuss his intimate feelings with a high school friend.  The internet banter in this case was protected speech and is not subject to school disciplinary action.  Comments of both students in this case were crude.  As a result, plaintiffs in this case do not seek and would not expect a vindication of DJM.  Instead, the case should be ended with a vindication for the First Amendment and the rights of free speech for all students.

Plaintiffs DJM, DM and JM's Memo in Opposition to Defendants' Mot for Summary Judg
DJM, et al. v. Hannibal Public School Dist. #60, et al.                    Cause No. 2:08-CV63

Respectfully submitted,

/s/ Branson L. Wood III

_____

Branson L. Wood III                        MO Bar #26786
Attorney for Plaintiffs                    ED of MO #4742
1001 Center Street
Hannibal, MO  63401
Office #(573) 221-4255
FAX #(573) 221-7413                         BLW:ljm

N:\Clients\Mardis, David\4865B\PLD2\Pla Memo Opp Def Mot Summ Judg.wpd

# Certificate of Service

I hereby certify that on the 11th day of December, 2009, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following: Mr. Joseph M. Wientge Jr., Mickes Goldman O'Toole, LLC, 555 Maryville University Drive, Suite 240, St. Louis, MO  63141.

/s/ Branson L. Wood III

_____

Branson L. Wood III                        MO Bar #26786
Attorney for Plaintiffs                    ED of MO #4742
1001 Center Street
Hannibal, MO  63401
Office #(573) 221-4255
FAX #(573) 221-7413